UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**AMRIT HANS-ATCHISON,**

**Plaintiff,**

**Case No.: 6:24-cv-586-Orl-ACC-LHP**

**v.**

**ANTHEM INSURANCE COMPANIES, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD NAME,**

**Defendant,**

---

# ORDER

On March 26, 2024, Plaintiff Amrit Hans-Atchison filed a one-count Complaint asserting that she was unlawfully denied health insurance benefits by the claims administrator in violation of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1000, et seq. ("ERISA"). (Doc. 1). Following two amendments, the operative pleading names as Defendant Anthem Insurance Companies, Inc. d/b/a Anthem Blue Cross and Blue Shield ("Anthem") (Docs. 5, 21 (Second Amended Complaint)). In accordance with the Court's Scheduling Order for a Claim-Review Case Filed Under ERISA, Plaintiff timely filed an Opening Brief (Doc. 46); Defendant Anthem filed its Answering Brief and Request for Final Judgment (Doc. 55); Plaintiff filed a Reply brief in opposition (Doc. 59); and Anthem filed an authorized Sur-Reply brief (Docs. 69, 70).

Plaintiff is suing Anthem as the claims administrator who denied her request for acute inpatient rehabilitation services finding such services not "medically necessary" because clinical records did not show that she was making significant progress. Plaintiff appealed the denial and submitted clinical records in support. Anthem ultimately reversed its decision, but only for the single day of inpatient care for which Anthem contends it had received a precertification request. Based on the parties' submissions and a review of the administrative record and relevant case law, the Court concludes that Plaintiff did not exhaust her administrative remedies for any date other than June 25, 2023, which Anthem ultimately approved. Thus, no appeal is properly before the Court and Anthem is entitled to a final judgment in its favor.

## I. BACKGROUND

### A. Factual Background

Plaintiff was diagnosed with Guillain-Barre Syndrome and Neurogenic Bladder beginning January 2022; she was first admitted for inpatient treatment at an acute rehabilitation facility in July 2022. R. 1900.[1] Plaintiff, through her spouse's employer, is a member of a self-funded group health plan (the "Plan") sponsored by Hitachi America, Ltd., who is the Plan administrator. R. 1891; R. 2063. Effective

[1] The Court refers to pages from the record as "R." followed by the bates number with the leading zeros omitted for ease of reference and consistency with citation guides. *See* Doc. 67.

January 1, 2023, Hitachi engaged Anthem to serve as claims administrator under the Plan and delegated to Anthem full discretion to interpret the Plan, to make claims determinations, including whether services were "medically necessary," and to resolve appeals. R. 1891, 2063-98, 2245-46.

*i. Relevant Terms of the Plan*

Members of the Plan are bound by Anthem's interpretation of the Plan when Anthem administers the Coverage. The Plan Document states as follows:

> The Claims Administrator shall have all the powers necessary or appropriate to enable it to carry out its duties in connection with the operation of the Plan and interpretation of the Benefit Booklet. This includes, without limitation, the to [sic] determine all questions arising under the Plan, to resolve Member appeals and to make, establish and amend the rules, regulations and procedures with regard to the interpretation of the Benefit Booklet of the Plan. A specific limitation or exclusion will override more general benefit language. Anthem has complete discretion to interpret the Benefit Booklet.
>
> The Claims Administrator's determination shall be final and conclusive and may include, without limitation, determination of whether the services, treatment, or supplies are Medically Necessary, Experimental or Investigational, whether surgery is Cosmetic Surgery, and whether charges are consistent with the Plan's Maximum Allowed Amount. A Member may utilize all applicable appeals procedures.
>
> R. 2245-46.

The Plan includes the Benefits Booklet, which is a description of the portion of the health care benefits provided under the Plan that is administered by Anthem. R. 2063-64. Anthem has complete discretion to interpret the Benefits Booklet. R. 2245. Under the terms of the Plan all covered services must be "medically

necessary" and meet Anthem's applicable medical policy and clinical guidelines. R. 2187. To assist in making "medical necessity" decisions under the Plan, Anthem utilizes its clinical coverage guidelines, such as medical policy, clinical guidelines, preventative care clinical coverage guidelines, and other applicable policies and procedures. R. 2197.

The services in Plaintiff's case were covered under the Plan as "acute inpatient" or "acute rehabilitation."[2] R. 2192. The Plan which Anthem administered[3] in 2023 required precertification for certain services, including "inpatient admission" for "acute inpatient" and "acute rehabilitation." R. 2188; R. 2197. The Plan's precertification process "required review of a service, treatment, or admission for a benefit coverage determination which must be obtained prior to the service, treatment, or admission start date." R. 2192. Although Plaintiff had been receiving inpatient rehabilitation care at NeuLife Rehabilitation for her conditions since July 2022, her treatment had been administered by a different insurance carrier[4] until coverage with Anthem began on January 1, 2023. R. 1900, 1909.

[2] Plaintiff argued that NeuLife's services were covered as a "Skilled Nursing Facility" admission. *See* R. 2215. Admission to a Skilled Nursing Facility also required "precertification," which Plaintiff does not dispute. R. 2192.

[3] Discussion of the Plan is limited to 2023 version, although the parties cite to some actions that they each took in 2024.

[4] Aetna was the claims administrator previously at the time Plaintiff was originally admitted to the rehabilitation facility in July 2022. R. 1900.

When the services were out-of-network, such as NeuLife was in this case, the member was required to obtain the necessary precertification:

**Out-of-Network Services**

When You do not use a Network Provider or get care as part of an Authorized Service, Covered Services are covered at the Out-of-Network level, unless otherwise indicated in this Benefit Booklet.

For services from an Out-of-Network Provider:

- the Out-of-Network Provider can charge You the difference between their bill and the Plan's Maximum Allowed Amount plus any Deductible and/or Coinsurance/Copayments;
- You may have higher cost sharing amounts (i.e., Deductibles, Coinsurance, and/or Copayments);
- You will have to pay for services that are not Medically Necessary;
- You will have to pay for Non-Covered Services;
- You may have to file claims; and
- You must make sure any necessary Precertification is done. (Please see **Health Care Management – Precertification** for more details.)

| | | |
|---|---|---|
| BlueCard Provider outside the service areas of the states listed in the column above and BlueCard Providers in other states not listed<br><br>and<br><br>Out-of-Network/Non-Participating | Member | • Member must get Precertification when required or work with your Provider to assist in obtaining Precertification. Call Member Services at the number on the back of Your Identification Card.<br>• Member may be financially responsible for charges/costs related to the service and/or setting in whole or in part if the service and/or setting is found to not be Medically Necessary. |

R. 2188, 2197.

On January 6, 2023, NeuLife contacted Anthem to request authorization for inpatient rehabilitation services on a per-day basis for Plaintiff, from January 1-15, 2023. R. 1933. Anthem approved the acute inpatient rehabilitation as medically necessary to regain functional mobility and independence with activities of daily living. *Id*. From mid-January to mid-June of 2023, NeuLife submitted requests to

extend Plaintiff's inpatient acute rehabilitation for authorization of seven days at a time. R. 1934-41.

*ii. June 21, 2023 Denial of Precertification for June 25, 2023*

Anthem approved the first 21 extension requests from NeuLife through May 2023 without raising any issues regarding "medical necessity." Id. However, on June 7, 2023, the Anthem-registered nurse noted in the claims review for the June 5 to June 11, 2023 extension that the criteria was "not met" because, based on the medical information provided, they were "unable to determine medical necessity of continued stay . . . unsure if member has plateaued/reached maximum rehab potential or would continue to benefit from continued rehab." R. 1940. The Medical Director reviewing the file advised to "inform the facility (and member) that these will likely be the last approvable continued stay days" because "[t]he care she is receiving can be provided outpatient by home health care. She has plateaued on her physical therapy and occupational therapy progress." R. 1903.

When NeuLife requested an extension (Number 23) in providing Plaintiff's continued care from June 19 to June 25, 2023, Anthem approved six of the seven days of the requested stay through June 24th but denied the final day (June 25th) as not "medically necessary." R. 1941, 2030. On June 21, 2023, the Anthem reviewer noted:

> Reason unable to approve: Unable to determine medical necessity of continued stay, Continues [] receiving PT/OT/Nursing services with

> physician oversight, question if member has plateaued/reached maximum rehab potential or would continue to benefit from continued rehab. Has been at facility since July 2022. Will refer to PCR for determination of continued medical necessity. . . . Please note with PCR review of June 7th MD stated that would likely be the last approvable continued stay days, facility was made aware, now asking for extension.

R. 1941.

To determine medical necessity, the review was referred to a PCR (peer clinical reviewer/medical director) who noted that the inpatient services Plaintiff was receiving no longer met the clinical coverage criteria and Plaintiff could continue the therapy at a skilled nursing facility level or at home, and such treatment options may be available to her. R. 2105.

On June 21, 2023, Anthem informed Plaintiff that her request for June 25, 2023 was denied as not "medically necessary" for continued care at the NeuLife acute rehabilitation facility. R. 2030, 2104-06. The "Results of the review . . . showed that the care [Plaintiff] requested is Not Medically Necessary. We can't approve [the] request because your plan doesn't cover care that is Not Medically Necessary." R. 2104. The "Details from the review" advised Plaintiff to "consider discussing with [her] doctor" the following explanation:

> The request tells us you went to rehab (acute rehabilitation facility) for your nerve problem. Your doctor has asked to extend your stay. The plan clinical criteria considers continued care in a rehab facility medically necessary for those who: 1) are participating in intensive therapy (generally a minimum of 15 hours per week); 2) are showing measurable improvement in their functioning; 3) are making progress in therapy (Physical Therapy, Occupational Therapy, and/or

> Speech/Language Therapy); and 4) other care needs are stable or improving. The information we have does not show you are making significant progress. For this reason, this request for continued stay after June 24, 2023 is denied as not medically necessary. There may be other treatment options to help you (such as supported home care or skilled nursing facility). You may want to discuss these with your doctor. It may help your doctor to know we reviewed this request using the MCG guideline Inpatient Rehabilitation Facility (IRF) Admission Recovery Facility Care: Neurological Disorders (ORG: I-7016).

R. 2104; *see also* R. 2030 (internal). The letter was copied to Plaintiff's "treating practitioner" at NeuLife. R. 2104. The letter also advised her of the "right to appeal" and attached a guide called "Rights Available to Members" which explained her options, told how much time to appeal, and listed information that she would need to send to Anthem. R. 2105. As part of the denial, Anthem noted that it had reviewed her request using the MCG Guideline Inpatient Rehabilitation Facility (IRF) Admission Recovery Facility Care: Neurological Disorders (OR: 1-7016) ("MSG Guidelines").[5] R. 2105; *see* R. 2338-R. 2339. The June 21, 2023 letter also informed Plaintiff that "[a]n experienced health-care professional handled the review. The clinical reviewer considered your health, your health plan, clinical

[5] Plaintiff contends that although Anthem quoted the MCG Guidelines, Anthem failed to provide a copy of them or a citation for Plaintiff to provide a detailed response. (Doc.46 at 7). However, the June 21 letter informed her that Plaintiff could obtain a free copy of the MCG Guidelines by calling Medical Care Management at the number on her member ID card. R. 2105. Moreover, the information appeared specifically geared to Plaintiff's treating physician: "It may help your doctor to know we reviewed this request using the MCG guideline . . . ." R. 2104.

criteria or guidelines, and may also have used the latest information from proven research and medical journals during the review." R. 2105-06.

Under the Plan, a member has a right to appeal an adverse benefit determination such as a claim denial. R. 2231-32. If a member's claim is denied, the Plan provides for a mandatory first level of appeal and a voluntary second level of appeal for the adverse benefit determination; the voluntary appeal must be submitted within 60 calendar days of the denial of the first level appeal.[6] R. 2231-34. Members are required to exhaust the Plan's internal appeals procedure before filing a lawsuit:

> **Requirement to file an Appeal before filing a lawsuit**
>
> No lawsuit or legal action of any kind related to a benefit decision may be filed by You in a court of law or in any other forum, unless it is commenced within three years of the Plan's final decision on the claim or other request for benefits. If the Plan decides an appeal is untimely, the Plan's latest decision on the merits of the underlying claim or benefit request is the final decision date. *You must exhaust the Plan's internal appeals procedure, but not including any voluntary level of appeal, before filing a lawsuit or taking other legal action of any kind against the Plan*. If Your appeal as described above results in an adverse benefit determination, You have a right to bring a civil action under Section 502(a) of ERISA.

R. 2234 (emphasis added). Plaintiff alleges in the operative pleading that "[a]ll conditions precedent to the institution of this action (*e.g.*, administrative pre-suit appeals) have occurred, been performed, been waived, or were futile." (Doc. 21 ¶ 36).

---

[6] There is also a provision for an "external review" (R. 2233) which it does not appear that Plaintiff pursued.

*iii. First-Level Appeal of June 21, 2023 Denial*

On June 22, 2023, Plaintiff's physician called to appeal the denial of the inpatient rehabilitation and to request two additional weeks of rehabilitation for Plaintiff. R. 1899. Anthem's notes indicate that the reviewing physician "reminded" Plaintiff's treating physician that Anthem "ha[d] approved [her stay] through 6/24/23" and:

> [Anthem] need[s] to have additional documentation that member is continuing making progress before additional days can be approved. Member is able to ambulate short distance with minimal assist. She is having some issues getting out of the bed but once she does she can ambulate. She is also able to climb 12 step[s] with mod[erate] assist. Bedroom is said to be on 2nd floor, I told [treating physician] that I cannot approve 2 weeks without additional clinical. Dr. [Fuentes] then agreed to send us the results of ITD results from yesterday. For now, after P2P [peer-to-peer review], decision pending the receipt of ITD round from yesterday.

R. 1899.

On June 23, 2023, after receiving the additional clinical documents and reviewing the claim through peer-to-peer review, Anthem upheld the first-level decision to deny the June 25, 2023 inpatient stay as not "medically necessary" because the information received did not show that Plaintiff was "making significant

progress" per the Plan's clinical criteria for continued inpatient rehabilitation stay. R. 2293-95.[7]

*iv. September 20, 2023 Second Level Appeal of June 25, 2023 Denial*

On September 20, 2023, Plaintiff's counsel sent Anthem a letter requesting a "Second Level Appeal Review" and representing she was submitting more than 1000 pages of clinical records in support. R. 99-1011. The appeal letter listed the "Date of Service Start Date" as "June 25, 2023 through all ongoing Dates of Service." R. 99. The appeal argued that "[b]ased on clinical evaluations, examination of the Insured by her treating providers, and continued progress, it is medically necessary for the Insured to remain at NeuLife due to her condition" and listed other reasons including the complexity of her condition, need for intensive therapy, (alleged) measurable improvement in functioning and progress in therapy, and other care needs that were stable and improving. R. 103. Plaintiff requested "full reimbursement of her out of pocket expenses" totaling $79,000 at the time of the appeal. R. 107.[8] On September 27, 2023, Anthem notified Plaintiff that it could not

---

[7] Plaintiff's briefing (Docs. 46, 59) does not always cite to pages in the Record, however, the corrected record was not filed until after the Opening Brief was due and the document Plaintiff cites (Doc. 1-4) is the same as R. 2293-95.

[8] Anthem argues that Plaintiff's second level appeal was untimely because it did not comply with the Plan's procedures for a second level appeal, which must be submitted within 60 calendar days of the denial of the first level appeal-June 23, 2023—and would have required submission of her second level appeal by August 22, 2023. R. 2233. The Court addresses the argument below in the discussion of exhaustion of administrative remedies.

proceed without a completed designation of representative form. R. 1861-68. Thus, Anthem's consideration of the appeal on Plaintiff's behalf for denial of her June 25, 2023 inpatient stay began after Anthem received the completed designation form on November 6, 2023. R. 1861-1868, 2913-2929.

*v. December 1, 2023 Reversal of Appeal of June 25, 2023 Denial*

After reviewing Plaintiff's "second level appeal," Anthem contacted Plaintiff's counsel by phone and by letter dated December 1, 2023 to notify Plaintiff that Anthem had reversed or overturned the denial of precertification for treatment for June 25, 2023 (only).[9] R. 2280-87. Although the September 20, 2023 "second-level appeal" from Plaintiff's counsel included medical records through September 15, 2023, no additional precertification requests had been submitted to Anthem for benefits determination, and no other denials were pending at that point.

*vi. Post-Reversal of June 25, 2023 Denial*

On December 21, 2023, after Anthem had reversed the denial of coverage for the June 25, 2023 date of service, NeuLife contacted Anthem and advised that Plaintiff had continued at NeuLife until July 28, 2023, when she left to go to a transitional living facility, not accredited to accept Medicare, and then had returned

---

[9] Plaintiff's counsel represents that, on November 27, 2023, an Anthem representative contacted her office to communicate the outcome of the appeal and counsel "clarified" that "all dates of service from June 25, 2023 moving forward" were at issue in the appeal. (Doc. 46 at 7-8). There is no citation to the administrative record for this communication, although the information is consistent with the letter dated December 1, 2023. R 2278-82.

to NeuLife on August 1, 2023. R. 1897. Prior to this time, or before the services were rendered, NeuLife had not attempted to seek authorization for any specific dates of service after June 25, 2023.

NeuLife belatedly requested an authorization[10] for dates of service for Plaintiff's inpatient acute rehabilitation from June 26, 2023 to July 27, 2023, but not until December 21, 2023; Anthem requested that NeuLife submit Plaintiff's clinical information for those dates so it could conduct a claims review. R. 1897. Anthem also advised that a new case would need to be initiated for the re-admission dates of August 1, 2023 to early December 2023. R. 1897.

On December 22, 2023, Anthem received the clinical documentation for dates of service from June 26, 2023 through July 27, 2023 (32 days). R. 1894-97. On January 4, 2024, after reviewing the clinical documentation, Anthem denied the 32-day request for an inpatient rehabilitation stay as "not medically necessary" on virtually the same grounds as the denial from June 21, 2023 (excerpted above – R. 2104):

> The request tells us you went to rehab (acute rehabilitation facility) for your nerve problem. Your doctor has asked to extend your stay. The plan clinical criteria considers continued care in a rehab facility medically necessary for those who: 1) are participating in intensive therapy (generally a minimum of 15 hours per week); 2) are showing

[10] Anthem points out that it allowed NeuLife to submit even though the Plan requires that precertification requests for acute inpatient admission and rehabilitation services must be obtained prior to the service, treatment or admission start date. (Doc. 55).

.

> measurable improvement in their functioning; 3) are making progress in therapy (Physical Therapy, Occupational Therapy, and/or Speech/Language Therapy); and 4) other care needs are stable or improving. The information we have does not show your condition has not met the above criteria. For this reason, this request for continued stay after June 25, 2023 is denied as not medically necessary. There may be other treatment options to help you (such as supported home care or skilled nursing facility). You may want to discuss these with your doctor. It may help your doctor to know we reviewed this request using the MCG guideline Inpatient Rehabilitation Facility (IRF) Admission Recovery Facility Care: Neurological Disorders (ORG: I-7016).
>
> R. 1892.

The internal Review Notes indicate that Plaintiff was "able to do rollator [upright walker] without issues"; no speech issues; no major OT [occupational therapy] issues; and "no significant metrics of progression over time." R. 1892-93 (medical doctor's internal notes); *see* R. 1813-16 (January 4, 2024 letter). In response to the January 4, 2024 denial for coverage for dates of services of June 26, 2023 through July 27, 2023, no first or second level appeals were subsequently submitted to Anthem.

Plaintiff's counsel submitted a follow up letter to Anthem on February 21, 2024 clarifying that the appeal submitted previously was not limited to only June 25, 2023 and requesting that the issue be resolved for approval of dates of service from June 25, 2023 "through all ongoing Dates of Service"; Plaintiff received no response from Anthem. (Doc. 1-5). Anthem points out that no claim requests, pre-

certifications, or clinical documentation were ever submitted to Anthem for an initial determination for dates of service at NeuLife for August 1, 2023 or later.

Plaintiff alleges that Anthem's refusal to cover inpatient rehabilitation services for all dates *after* June 25, 2023 "to present" violates the Plan's terms and provisions and constitutes a violation of 29 U.S.C. § 1132(a)(1)(B).

**B. Procedural History**

On March 26, 2024, Plaintiff filed her Complaint against Anthem alleging Anthem unlawfully denied Plaintiff health insurance benefits in violation of ERISA; she filed an amended version on April 8, 2024. (Doc. 1). On June 17, 2024, Plaintiff filed the Second Amended Complaint asserting a claim for denial of benefits, *see* 29 U.S.C. § 1132(a)(1)(B). (Doc. 21; Doc. 20) (granting leave to amend). On August 7, 2024, the Court issued a Scheduling Order for a Claim-Review Case Filed Under ERISA ("CMSO"). (Doc. 32). The CMSO set forth deadlines for the filing of the administrative record and the briefing schedule. On November 20, 2024, Anthem timely filed the administrative record under seal consisting of 3,155 pages without any table of contents, bates numbers, or certification, and non-sequential, independent pagination for each of 18 parts, which was "confusing at best." (*See* Doc. 63 at 10; Docs. 41 through 41-17). On April 1, 2025, without seeking or obtaining leave of Court, Anthem filed a second—and untimely—sealed administrative record without any explanation. (*See* Doc. 40; Doc. 58).

On April 3, 2025, Magistrate Judge Hoffman Price struck the April 1, 2025 filing and required Anthem to refile the November 20, 2024 version after correcting the noted deficiencies which she opined had made it "virtually impossible" to "determine the contents of the administrative record or to locate any specific portion of the record, including those cited by the parties." (Doc. 63 at 10) ("Simply put, the undersigned has no idea what Anthem has submitted beyond a compilation of medical records and Plan documents without explanation.").

On February 10, 2025, Plaintiff timely filed her Opening Brief. (Doc. 46). Anthem filed its Answering Brief and Request for Final Judgment in its favor on March 13, 2025. (Doc. 55). On April 1, 2025, Plaintiff filed her Reply brief in opposition (Doc. 59), and, with leave of Court, Anthem filed a Sur-Reply brief on April 30, 2025 (Doc. 70). The matter is ripe for review.

## II. STANDARD OF REVIEW

Since the text of ERISA itself does not set forth a standard for district courts to apply in reviewing an administrator's denial of benefits, the district court examines the plan documents to determine the applicable standard of review. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 (1989). A court applies the "arbitrary and capricious" standard of review to the denial of ERISA benefits where the plan administrator has discretionary authority. *Cagle v. Bruner*, 112 F.3d

1510, 1517 (11th Cir. 1997).[11] "[I]n an ERISA benefit denial case . . . the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Leahy v. Raytheon Co*., 315 F.3d 11, 17-18 (1st Cir. 2002).

Judicial review of a challenged benefits decision under ERISA is "limited to consideration of the material available to the administrator at the time it made its decision." *Blankenship v. Metro. Life Ins. Co*., 644 F.3d 1350, 1354 (11th Cir. 2011). Both parties cite the Eleventh Circuit's six-step framework, applied in *Blankenship*, that the district court must follow whenever it reviews an administrator's decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e*., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

[11] Both parties have relied on the arbitrary and capricious standard of review in their principal briefing.[11] (Doc. 46, 55; *see also* Docs. 47, 53, 57 (discovery motions)).

> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355.

Under the arbitrary and capricious standard, also referred to as an "abuse of discretion" standard, the court determines "whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Id.* at 1360. The plaintiff sustains the burden of proving entitlement to ERISA benefits. *Brannon v. BellSouth Telecomm., Inc*., 318 F. Appx. 767, 769 (11th Cir. 2009).[12]

## III. ANALYSIS

Plaintiff argues that Anthem has failed to comply with the Plan's terms and provisions in the processing of her appeal and approving her claim. She argues that she has incurred out of pocket expenses for all dates of service after June 25, 2023, even though the services were medically necessary and covered under the Plan. She contends that based on clinical evaluations, examinations of treating providers, and

[12] Unpublished opinions of the Eleventh Circuit constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36–2.

her continued progress, it was and continues to be medically necessary for her to remain at NeuLife due to her conditions.[13]

Anthem argues that no dates other than June 25, 2023 were considered in the appeal communicated on June 22, 2023 because there were no other denials of claims or precertification requests for any dates after June 25, 2023, which was the only day ripe for review through the Plan's internal appeal procedures. Anthem argues that it could not consider any date other than June 25, 2023 because there were no adverse benefits determinations for the other dates. So, even though Plaintiff submitted an appeal including the phrase "all ongoing Dates of Service" and (allegedly) submitted medical records through September 15, 2023, there had been no first level decision at Anthem for any dates of service past the single day (June 25, 2023) at the end of the seven days that NeuLife sought as part of a seven-day extension for June 19, 2023 to June 25, 2023.

**A. Exhaustion of Administrative Remedies**

The Court must first address whether Plaintiff met the requirement to exhaust administrative remedies (or has established a valid excuse for failing to do so) before considering the merits in this ERISA case. Although not required by the text of ERISA, the courts in the Eleventh Circuit and other circuits have required exhaustion

---

[13] Plaintiff estimates that she has incurred out of pocket expenses of $426,000 through February 15, 2024. (Doc. 46).

based on the interpretation of the statute and congressional intent. *See Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1204, 1207 (11th Cir. 2003).

Thus, before a plaintiff may bring an ERISA action in federal court, she must exhaust the administrative remedies provided for in the ERISA plan for challenging the administrator's denial of benefits or allege a reason for excusing the exhaustion. *See, e.g., Garcon v. United Mutual of Omaha Ins. Co.*, 779 F. App'x 595, 599 (11th Cir. 2019) ("[P]laintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court, unless a district court excuses the exhaustion requirement.") (citations omitted)); *Perrino v. So. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160 (11th Cir. 1992) ("Eleventh Circuit precedent requires employees to exhaust these procedures before filing suit for benefits under ERISA. . . . [However,] an exception should be recognized for pleading impossibility of exhaustion in cases where claims procedures prove futile." (citations omitted)); *Mason v. Continental Grp., Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985) (holding that "the district court did not err in holding that plaintiffs must exhaust their remedies under the [] plan agreement before they may bring their ERISA claims in federal court"). "We apply this exhaustion requirement to both ERISA claims arising from the substantive provisions of the statute, and ERISA claims arising from an employment and/or pension plan agreement." *Perrino*, 209 F.3d at 1315 n.6. The exceptions to the

exhaustion requirement apply "only when 'resort to administrative remedies would be futile or the remedy inadequate,'. . . . or where a claimant is denied 'meaningful access' to the administrative review scheme in place." *Id.* at 1316 (citations omitted)).

**B. Summary of the Arguments on Exhaustion**

In Plaintiff's Opening Brief she argues that the acute inpatient rehabilitation services provided at NeuLife were medically necessary under the Plan and the scope of the precertification was to be from June 25, 2023 "moving forward," which should have been through September 15, 2023. (Doc. 46 at 16). She argues that "Anthem received [Plaintiff's] pre-certification request timely and the appeal related to the pre-certification request" but, instead of conducting a thorough review, Anthem erred in approving only a single day of acute rehabilitation services—despite the fact Plaintiff requested approval for multiple dates of service. (*Id*. at 8) (citing R. 99-1011, 2913-16). She argues that, in her appeal, she listed itemized details for dates of service from June 25, 2023 through September 15, 2023 but "Anthem completely ignored the scope of Plaintiff's appeal and failed to provide a meaningful review of the information submitted." (*Id*.). Plaintiff contends that Anthem failed to act in her best interest even though she presented evidence and clinical documentation that the medical services requested were "medically necessary" from June 25, 2023 "forward" and "refused to pre-certify and pay for benefits at issue." (*Id*. at 12).

Although Plaintiff acknowledges that there is an issue with the "scope" of the pre-certification, she argues that there was no reasonable basis for Anthem's failure to pre-certify acute rehabilitation services for more than the single date of June 25, 2023 because Plaintiff "clearly laid out the scope" of the dates of service, which she now argues in her Opening Brief is "June 25, 2023 through February 10, 2025." (Doc. 46 at 14). She contends that "Anthem did not take into account all documents, records and other information [she] submitted"; therefore, "Anthem is in violation of ERISA law for having failed to provide a meaningful review as required by ERISA or act in the best interests of Plaintiff." (*Id*. at 15-16).

In its Answering Brief and Request for Final Judgment, Anthem argues that Plaintiff has failed to establish that she exhausted all necessary conditions and administrative remedies under the Plan for benefits for any dates of service beyond June 25, 2023 prior to bringing suit, and therefore, final judgment should be entered in its favor. (Doc. 55). At the time of Plaintiff's appeal, Anthem points out, only one date of service was denied; that date of service (June 25, 2023) was subsequently overturned in the appeal process and there was no other denial for Plaintiff to appeal at the time she submitted her second level appeal on September 20, 2023 which, Anthem argues, is "fatal to Plaintiff's case." (*Id*.).

Anthem argues that the portion of Plaintiff's appeal in the September 20, 2023 letter for "all ongoing Dates of Service" was improper and could not be considered

by Anthem since there was no adverse benefits determination after June 25, 2023. (*Id*.) Anthem argues that it is "nonsensical" for an appeal to (attempt to) cover "all ongoing dates of service" after June 25 "through forever into the future." (*Id*.). As would be the case for any appeal with an open-ended end date, Anthem argues that the Court should not allow a party to raise new factual and legal arguments for the first time on appeal, without giving the factfinder an opportunity to rule first.

Anthem points to NeuLife's two dozen precertification requests for extensions and medical records for inpatient services at issue that required an ongoing review and evaluation. From January 1 - June 25, these precertification requests and corresponding records were provided roughly every seven days and Anthem could not render a decision on "all ongoing dates of service." Anthem argues that regardless of Plaintiff's phone conversation or letter stating that the appeal was for "all ongoing dates of service," the fact is that there was no lower-level "adverse benefits determination" whether through September 15 or later for Anthem to consider on appeal other than the initial denial for June 25, 2023 (which it did reverse). (*Id*.). Anthem argues that under the Plan's claims appeals procedure, it could not review any date beyond June 25 as an appeal because Plaintiff had not previously submitted a claim or sought a precertification decision for the dates after June 25, and Plaintiff had not received an adverse benefit determination ripe for appellate review under the Plan for those dates. In other words, Anthem argues, there

must first be a denial of treatment provided for a specific date for a member to submit an appeal.

Plaintiff's Reply Brief more directly responds to the exhaustion issues raised by Anthem in its briefing. Plaintiff argues that although she "made multiple attempts" to "request that Anthem properly consider her appeal and evidence submitted which was for more than one day" and counsel "discussed these issues with Anthem more than once," Anthem "intentionally chose to ignore the evidence presented to it and failed to communicate with her." (Doc. 59 at 2). Plaintiff argues that she "did submit a precertification request" for what she calls "continued service" in June 2023 which "was denied by Anthem on June 21, 2023"—even though "Anthem had initially approved 175 days of services, [from] January 1, 2023 through and including June 24, 2023." Plaintiff argues that the history of 175-days-worth of prior approvals "prompt[ed] [Plaintiff] to have the provider or facility call Anthem if additional days were needed." (*Id.*) (citing R. 2144).

She argues that "[t]his is precisely what [Plaintiff] did through her provider NeuLife" when the "pre-authorization request was submitted and denied from June 24, 2023 moving forward." (*Id.*) (citing R. 2104) ("The information we have does not show you are making significant progress. For this reason, this request for *continued stay after June 24, 2023* is denied.") (emphasis added). She argues that "[i]t is unclear why Anthem formatted the denial letter in this manner" when "[a]t

all times [Plaintiff] and Provider [NeuLife] understood all days after June 24, 2023 were denied as stated in the letter." (*Id.*). She essentially argues that she implicitly sought approval for service dates up to September 15, 2023 by submitting with the appeal to Anthem clinical documentation for treatment through September 2023 accompanied by an itemized list of expenses totaling $79,000. (*Id.*) (citing R. 99-1011, 2913-16; R. 107).

Plaintiff acknowledges that a precertification request was submitted by NeuLife on June 19, 2023 in which she argues the "extension for continued services" request was submitted "without specifying the number of days [] subject to the authorization." (*Id.*) (citing R. 1012-71). However, she argues that the effect of NeuLife failing to specify the number of days sought for pre-certification—when NeuLife had previously sought approvals of 7 to 10 days over the previous 175 days—meant the inpatient rehabilitation provider (on behalf of Plaintiff) was seeking authorization for "continuing dates." (*Id.*).

Plaintiff contends that she "made various attempts to remedy" Anthem's decision via a November 27, 2023 phone call and a February 21, 2024 letter to Anthem explaining that her appeal was not limited to one day and requesting that the period in dispute being appealed be extended to "the present," but Anthem failed to respond, the Anthem representative already familiar with her file had moved, and the record showed an internal comment by the new reviewer entered on December

1, 2023 that she would decide if a "continuing stay" was medically necessary. R. 1898.

Plaintiff additionally argues, as to the timeliness of her appeal, under both the Plan and the denial letter, that she had 180 days from June 21, 2023 to file an appeal, which would have allowed her up to December 18, 2023, thus her appeal was timely filed on September 20, 2023. (Doc. 59 at 2). Plaintiff also argues that Anthem's denial letter was dated December 1, 2023, therefore, Anthem cannot now inject additional information and documentation collected after that date to bolster her arguments because the information submitted after December 1st was not before the administrator at the time of the decision.

**C. Ruling**

The Court finds that Plaintiff has failed to exhaust administrative remedies for all dates after June 25, 2023, which Anthem subsequently approved; thus, Anthem is entitled to final judgment. The reasons underlying the recognition of an exhaustion requirement have been articulated as follows:

> [a]dministrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Perrino*, 209 F.3d at 1315 (quoting *Mason*, 763 F.2d at 1227). Generally, if an individual fails to exhaust the administrative remedies, that person's claim is barred. *See Watts*, 316 F.3d at 1206. The courts strictly enforce the exhaustion requirement, but the Eleventh Circuit has recognized certain exceptions. *Perrino*, 209 F.3d at 1315–16.

In this case, under the Plan, members who require inpatient acute rehabilitation services from out-of-network providers like NeuLife must obtain precertification. If the precertification is denied, the Plan provides that the member has a right to appeal that adverse benefit determination. R. 2231-32. Once the member's claim is denied, the Plan provides for a first level of appeal that is mandatory, and a voluntary second level of appeal for the adverse benefit determination. R. 2231-34. According to the Plan, a member has 60 calendar days after the denial of the first level appeal in which to file a *voluntary* second level appeal. R. 2233. The Plan also requires the member to complete the internal Anthem appeals process before initiating a lawsuit against Anthem arising out of the decision: "You must exhaust the Plan's internal appeals procedure, but not including any voluntary level of appeal, before filing a lawsuit or taking other legal action of any kind against the Plan." R. 2234. Anthem has a minimum of one level of review for a denial before a member may file a lawsuit.

Here, Plaintiff's pre-certification request at issue was to extend her inpatient rehabilitation at NeuLife from June 19 through June 25, 2023 for seven days. R. 1941. On June 21, 2023, Anthem approved six of the seven days requested in the extension but denied precertification for the final day sought, June 25, 2023. R. 1941. On June 22, 2023, Plaintiff's physician from NeuLife, Dr. Fuentes, called Anthem to appeal the denial and ask for a two-week extension, and Anthem's medical director reminded the doctor that Anthem had approved six of the seven days of inpatient rehabilitation. R. 1899.

By denying the last day of the extension, Anthem effectively signaled that any additional extensions would be denied unless additional documentation was submitted showing that Plaintiff was "continuing to make progress" before additional days would be approved. R. 1899. NeuLife submitted the additional clinical documents, but the decision to deny the June 25, 2023 inpatient stay as not "medically necessary" was unchanged per the Plan's criteria for inpatient rehabilitation. R. 2293-95. The result was that Plaintiff could seek coverage for a skilled nursing facility or home with support—NeuLife had been cautioned on June 7, 2023 that Plaintiff was not "making significant progress" and extensions would be denied (although an additional an extension to June 24 was subsequently granted).

On September 20, 2023, Plaintiff submitted her appeal of the denial of the pre-certification, attaching an itemized list of out-of-pocket expenses from June 25

to September 15, 2023. R. 99-107. The appeal stated that it was for "Date of Service Start Date: June 25, 2023 through all ongoing Dates of Service." R. 99. There are two reasons that the "Request for Second Level Appeal Review" sent by Plaintiff's counsel on September 20, 2023 was not a timely or effective appeal under the Plan. First, it was too late under the terms of the Plan. The first-level mandatory appeal took place on June 22, 2023 after Plaintiff (through NeuLife) submitted documentation that failed to show "she was making significant progress" and the request for another precertification extension was denied by the medical director. The sixty-day deadline for a second-level appeal passed on August 21, 2023 without any voluntary second-level appeal filed.

Although Plaintiff's counsel submitted the "second level appeal review" to Anthem on September 20, 2023 (R. 99-107), Plaintiff's authorization form was not received until November 6, 2023. Once it was received, Anthem communicated the decision to reverse the denial for June 25, 2023 promptly in writing by December 1, 2023. At that point, only the June 25, 2023 precertification request had been submitted or appealed. Anthem did not receive the request from NeuLife for authorization until three weeks later, on December 22, 2023, when Anthem received the clinical documentation for dates of service from June 26, 2023 through July 27, 2023 (32 days). It is undisputed that NeuLife never submitted the documentation for August 1 through early December 2023 as a re-admission.

The second reason the September 20, 2023 "Request for Second Level Appeal Review from Plaintiff's counsel was ineffective was because Plaintiff requested a second-level appeal review, not simply for June 25, 2023 (which had indisputably been denied) but "through all ongoing Dates of Service" up until September 15, 2023, even though precertification extensions from NeuLife (or after-the-fact requests) for that time period –June 26 to September 15, 2023 had never been submitted to Anthem, or denied by Anthem, or appealed to Anthem by September 20, 2023.

After Dr. Fuentes' contacts with Anthem on June 22, 2023, NeuLife did not submit any other requests for coverage of inpatient rehabilitation provided to Plaintiff from June 26, 2023 to July 27, 2023 until December 21, 2023 (even though *pre*certification is required under the Plan for such services). R. 1897. After Anthem denied coverage on January 4, 2024 for the 32-day period NeuLife sought, as "not medically necessary" on virtually the same grounds as the previous denial, Plaintiff sent Anthem a one-paragraph letter on February 21, 2024 to "clarify" that the appeal submitted previously (on September 20, 2023) was not limited to only June 25, 2023. (Doc. 1-5). When Plaintiff received no response from Anthem, she filed suit on March 26, 2024. (Doc. 1).[14]

---

[14] Although Anthem advised NeuLife that a new case would have to be filed for the re-admission dates after August 1, 2023 through December 2023 (R. 1897), but neither NeuLife nor Plaintiff filed any additional claim requests, pre-certifications, or clinical documentation was ever

Plaintiff attempts to avoid the impact of failure to comply with the exhaustion requirement by arguing that Anthem's "delay" or failure to respond to "all the evidence submitted" in her September 20, 2023 appeal within 60 days means "Anthem failed to substantially comply with the terms of the Plan with its untimely response" (Doc. 59 at 5) and her failure to exhaust administrative remedies should be excused on that basis. *See, e.g., Torres v. Pittston Co.*, 346 F.3d 1324, 1332 (11th Cir. 2003) (failure of an administrator to complete the final disposition of a claim in a timely manner results in a "deemed exhaustion" of the claimant's administrative remedies). However, Plaintiff's "second appeal" request was not complete until November 6, 2023 when her form was submitted and she was notified by phone on November 27, and in writing on December 1, 2023, well within the 60 days required. Therefore, the "deemed exhausted" doctrine does not apply.[15]

## IV. CONCLUSION

Based on the foregoing, it is ordered as follows:

1. Defendant Anthem Insurance Company, Inc. d/b/a/ Anthem Bule Cross and Blue Shield's Motion for Final Judgment (Doc. 55) is **GRANTED**.

---

submitted to Anthem for an initial determination for dates of service at NeuLife for August 1, 2023 or later.

[15] Because the Court found that Plaintiff had not exhausted administrative remedies, the Court does not reach the merits.

2. The Clerk shall enter a final judgment providing that Plaintiff Amrit Hans-Atchison shall take nothing on her claims against Defendant Anthem Insurance Company, Inc. d/b/a/ Anthem Bule Cross and Blue Shield. The judgment shall further provide that the Defendant shall recover its costs of action.

3. The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on September 18, 2025.

/s/ Anne C. Conway
Anne C. Conway
United States District Judge

Copies furnished to:
Counsel of Record